HENRY PASCHEN AND FOREMAN TRUST & SAVINGS BANK, ADMINIS-TRATOR OF THE ESTATE OF FRANK PASCHEN, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 13, 1927.*

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for claimant.

OSCAR E. CARLSTROM, Attorney General; S. S. DUHAMMEL, Assistant Attorney General, for respondent.

Mr. JUSTICE THOMAS delivered the opinion of the court:

In the spring of 1919 the Board of Supervisors of Lake County determined to improve one of the State aid roads of that county by surfacing it with a concrete pavement. After all the necessary preliminary steps were taken the contract for the work was let to Paschen Brothers, a firm of contractors composed of Henry and Frank Paschen. The contract was dated June 12, 1919, and provided that the work should be completed by December 14, 1919, but it was not finally finished until in 1921. By the terms of the contract the contractors were to furnish all the labor and material except the cement, which was to be furnished by the county. Frank Paschen died, and Foreman Trust & Savings Bank was appointed administrator of his estate, and Henry Paschen and said administrator have jointly filed this claim against the State for the sum of $96,272.64. Claimants charge that the

delay in completing the work was caused by failure of the county and State to furnish cement to the contractors as it was needed, and that such delay necessitated paying extra prices for labor, materials, etc., aggregating the amount for which this claim is filed. Claimants do not contend that the specifications for the work were changed in any way, nor that any additional work or material was necessary to complete it, but their claim is based wholly upon the ground that the contractors were entitled to extra compensation because labor, materials, etc., advanced in price in the years 1920 and 1921 over what they were in 1919; and these increased prices, together with other alleged expenses incident to the delay, constitute the extra compensation for which this claim is filed.

The Attorney General filed a general demurrer to the declaration and afterwards, under a stipulation, evidence was taken by both claimants and the State. The record is very voluminous but, as we view it, there are only two questions necessary for this court to decide.

Section 19 of Article 4 of the Constitution provides that "the General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made," etc. This provision of the Constitution is mandatory and binding upon the General Assembly and all courts of the State. No demand for extra compensation was made upon the State by the contractors until after the work which they were to do had been rendered, and under this provision of the Constitution this court has no power to grant them any extra compensation for such work; and should this court make an award allowing such extra compensation, the General Assembly would have no power, under this provision of the Constitution, to make an appropriation for the payment of it.

It has been repeatedly held by this court, and by the courts of other states, that the State is not responsible for the misfeasance, wrongs, negligence or omissions of duty of its officers, agents or servants, and that the State does not guarantee to any person the fidelity of the agents or officers whom it employs. This rule has been so frequently announced that the citation of authorities is not necessary, and under it claimants cannot maintain their action against the State, even if the State were a party to the contract and the delay had

been caused by the failure of its agents and officers to furnish the cement as claimants contend.

But the record in this cause shows conclusively that the State was not a party to the contract. The contract itself shows that it was made with Lake County and that Lake County alone was bound by its terms. The road which was to be improved under the contract was not a State road but a State aid road, and was under the supervision of the authorities of Lake County. Under the provisions of the Road Law the county had the right to improve any State aid road within the county and pay the whole expense thereof out of any funds in the county treasury not required for other purposes. While it is true that the law provides that the State will repay the county one-half the cost of such improvement, that provision does not make the State a party to the contract for improving such road, nor give the contractor any claim against the State. Should the State fail to pay the county one-half of the cost of such improvement, the county might have a claim against the State which a Court of Claims would allow, because the statute expressly provides that where a county bears the whole expense of improving a State aid road the State will allot and pay to the county one-half of such expense. The contract between the county and the contractors expressly stated that the State assumed no liability except that of approving the plans and specifications and supervising the work, and the contract further expressly provided that failure to furnish the cement should not entitle the claimant to any extra compensation. These provisions were in the contract when it was executed, and the contractors were bound by them. The contract provided that the county would furnish the cement, and it was not material to the contractor where the county procured the cement which it was to furnish, whether from the State or a private individual. The fact that the county had an arrangement with the State whereby the State was to furnish the cement to the contractor for the county did not make the State a party to the contract any more than it would a private individual with whom such arrangement had been made by the county, and if claimants have any cause of action, it is against the county and not the State.

This court has no power to make an award in favor of a claimant unless the facts show either a legal or equitable

claim against the State. It was not the intention of the General Assembly in creating the Court of Claims to give the court discretion to make awards in favor of claimants regardless of whether or not they had legal or equitable claims against the State. There is nothing in the record in this case that would justify an award in favor of claimants, and the claim is therefore disallowed and the cause dismissed.